UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID PAL, *et al.*, | ) | CASE NO. 1:23-cv-01233 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MARK DELIBERATO, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

David Pal ("Pal") and Just a Side Business, LLC (together "Plaintiffs") move for summary judgment on Counts Seven and Eight of their First Amended Complaint. (Doc. 26.) Defendants Mark Deliberato (also known as Mark Dulik but referred to herein as "Deliberato"), CTech Partners LLC ("CTech"), and M1 Venture Partners LLC ("M1VP") (collectively "Defendants") opposed the motion, and Plaintiffs timely replied. (Docs. 29, 30.) For the reasons below, Plaintiffs' motion is GRANTED. The Court also VACATES the prior Order provisionally sealing the Agreement at issue.

I.  BACKGROUND

A.  Procedural History

On June 22, 2023, Plaintiffs commenced this action alleging breach of contract, breach of fiduciary duty, quantum meruit, unjust enrichment, fraud, and dissolution. (*See id.* at 10–14.)[1]

On August 2, 2023, Plaintiffs requested the Clerk of Courts enter default against all Defendants. (Doc. 8.) On August 7, 2023, default was entered. (Doc. 9.) That same day, two of the named Defendants, CTech, and M1VP, moved to vacate the default entry and requested

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

additional time to respond to the complaint. (Doc. 12.) The Court granted CTech and M1VP's motion to vacate and extended the deadline to respond. (August 24, 2023 Order.) CTech Partners and M1VP answered. (Doc. 13.)

Plaintiffs later moved to amend the complaint. (Doc. 16.) Defendants did not oppose the motion, and leave was granted. (January 9, 2024 Minute Order.) The first amended complaint asserts eight causes of action, with counts seven and eight being the pertinent counts for purposes of this motion. (Doc. 16-2.) On January 23, 2024, all named defendants answered the first amended complaint. (Doc. 17.) Plaintiffs later sought and were granted leave to file the pending partial motion for summary judgment. (Doc. 22; March 12, 2024 Order.) The Court stayed all deadlines relative to Counts One through Six. (March 12, 2024 Order.)

**B.     Undisputed Facts**

On October 13, 2024, Defendants circulated a draft settlement agreement. (Doc. 26-1 at 314, ¶ 5.) Plaintiffs executed a finalized settlement agreement ("Agreement") on November 3, 2024. (*Id.* ¶ 6.) On November 14, 2024, Defendants executed the Agreement. (*Id.* ¶ 7; Doc. 27.) Under the Agreement, Defendants were required to pay $290,926.09 ("Settlement Payment") within seven days of execution. (Doc. 26 at 298; Doc. 27 at 386, § 2(a).) The Agreement also included provisions regarding balances in certain accounts, dissolution of Untitled Labs LLC, assignment of software, and responsibility for tax preparation. (Doc. 26 at 298–99; Doc. 27 at 387–89, §§ 3, 4, 6, 10.)

Under the Agreement, the Settlement Payment was to be paid to an escrow account held by Reitler Kailas & Rosenblatt LLP on or before November 21, 2023. (Doc. 26-1 at 314, ¶ 8.) The Agreement expressly addressed non-payment. Under Section 2(d): "In the event of a default, [Plaintiffs] can elect to permit the [Defendants] to cure the default at a charge of $1,000

2

per day or can elect to declare the Agreement null and void and continue the Litigation." (Doc. 27 at 387, § 2(d).) Plaintiffs did not receive the Settlement Payment within seven days of execution. (*See* Doc. 26-1 at 314–15, ¶¶ 9–11; *see also* Doc. 26-3; Doc. 26-4.)[2]

After waiting several weeks for payment, Plaintiffs moved for leave to file an amended complaint. (Doc. 16). The Court granted Plaintiffs' motion for leave. (January 9, 2024 Order.) The amended complaint included new allegations of Defendants' alleged fraud and additional causes of action for breach of the Agreement, specific performance, and breach of the duty of good faith and fair dealing. (*See* Doc. 16-2.) Plaintiffs later moved for leave to file a pre-discovery summary judgment motion and a motion to stay discovery on the first six counts of their amended complaint. (Doc. 22.) The Court granted Plaintiffs' motion and established a briefing schedule for the motion for summary judgment. (March 12, 2024 Order.)

Plaintiffs moved for summary judgment on Count Seven (breach of the Agreement) and Count Eight (specific performance) of the First Amended Complaint. (Doc. 26.) Defendants timely opposed the motion, (Doc. 29), and Plaintiffs replied (Doc. 30).

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is

---

[2] On November 27, 2024, Defendants represented to Plaintiffs' counsel that there was a hold on a deposit in Defendants' bank accounts preventing the wire payment from being completed. (Doc. 26-1 at 315, ¶ 9(c); Doc. 26-3 at 322). Defendants stated they sent a wire on November 28, 2023, which was "cleared and posted" by December 4, 2023. (Doc. 26-1 at 315, ¶ 10(a), (f); Doc. 26-4 at 338, 340.) Despite these representations, Defendants do not dispute their failure to make the required Settlement Payment. (Doc. 29 at 410.)

entitled to judgment as a matter of law. The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849–50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005). A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) & (e). Rule 56 also provides "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation and citation omitted). The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The ultimate

4

question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.*

### III. ANALYSIS

#### A. Breach of the Agreement

To establish a claim for breach of contract under Ohio law, a plaintiff must prove (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss resulting from the breach. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019). Plaintiffs' motion for summary judgment asserts that the Agreement is a valid and enforceable contract. (Doc. 26 at 303.) Plaintiffs also performed under the Agreement, while Defendants breached. (*Id.*) Plaintiffs allege they were damaged in the amount of $342,714.21. (*Id.* at 304.)

Defendants do not dispute "the parties signed the [] Agreement and that Defendants failed to make the settlement payment set forth in the [] Agreement." (Doc. 29 at 410.) Defendants likewise do not contest Plaintiffs performance or proof of damages. (*See id.*) Instead, Defendants argue Plaintiffs cannot enforce the Agreement through a breach of contract action.

As stated above, Section 2(d) of the Agreement provides:

> In the event payment is not received within 7 days after the effective Date (meaning the funds transferred via wire have cleared into the bank account identified in paragraph 2a), the [Defendants] will be considered in default under the Agreement. In the event of a default, [Plaintiffs] *can* elect to permit the [Defendants] to cure the default at a charge of $1,000 per day or *can* elect to declare the Agreement null and void and continue the Litigation.

(Doc. 27 at 387, § 2(d) (emphasis added).) Defendants argue the Agreement provides Plaintiffs with only two remedies if the Settlement Payment is not timely paid: giving Defendants an

5

opportunity to cure or declaring the Agreement null and void. (Doc. 29 at 410.) To Defendants, this language clearly and unambiguously prevents Plaintiffs from enforcing the Agreement in any other way, including bringing a breach of contract claim. (*Id.* at 411.)

On reply, Plaintiffs highlight Section 2(d) uses "can" rather than "shall" or "must." (Doc. 30 at 420.) Plaintiffs also point out other sections of the Agreement that use "shall," showing the parties intentionally distinguished between a "mandatory right or obligation" and permissible rights. (*Id.* at 420–21 (comparing the use of "can" in § 2(d) to the use of "shall" in § 3).) Plaintiffs also argue they allowed Defendants to cure the default by waiting weeks before seeking leave to amend the complaint to include Counts seven and eight. (*Id.* at 422.)

When a court interprets a contract, "'the principal objective is to determine the intention of the parties' and give effect to that intent." *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 837 (6th Cir. 2023) (quoting *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 900 (Ohio 1999)). The first step is "to look at the plain meaning of the words in the contract." *Id.* If that language is "clear and unambiguous, contract terms are given their plain and ordinary meaning." *Id.* A contract is unambiguous "if it can be given a definite legal meaning." *Id.* (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)). The parties agree Section 2(d) is clear and unambiguous. (Doc. 29 at 411 ("In the instant matter, the text of the [] Agreement is clear and unambiguous."); *see* Doc. 30 at 422.) Accordingly, the Court will give the language in Section 2(d) its plain and ordinary meaning.

To determine ordinary meaning, "dictionaries are a good place to start." *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013). Black's Law Dictionary defines "can" as "(1) to be able to do something (you can lift 500 pounds)" or "(2) to have permission (as often interpreted by courts)." *Can*, Black's Law Dictionary 12th ed. 2024; *see also Aikens v. Miller*, No. 20-

6

13257, 2021 WL 2949496, at *6, 2021 U.S. Dist. LEXIS 130908, at *16–17 (E.D. Mich. July 14, 2021) (relying on the Oxford English Dictionary definition of "can" as "an expression of 'objective possibility, opportunity, or absence of prohibitive conditions'"). It also lists "may" as a synonym of "can." The Supreme Court's analysis of "may" in *Kingdomware Technologies* provides useful guidance. There, the Supreme Court explained "[u]nlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016).

In the context of statutory interpretation, Ohio Courts have noted "[t]he use of the word *can* is important." *State ex rel. Root v. Indus. Comm'n*, No. 15AP-1124, 2017-Ohio-512, ¶ 10 (Ohio Ct. App. 2017) (emphasis in original). By using "can," a statute enables an action "but does not compel it." *Id.* The same is true here. The Agreement enables Plaintiffs to choose between the two options in Section 2(d), but it does not compel them to take either action. S*ee id.*; *see also Aikens*, 2021 WL 2949496, at *6, 2021 U.S. Dist. LEXIS 130908 at *17 (holding a contract's use of "can" implies discretion, not that "basic remedies for contracts [] are excluded, limited or otherwise barred").

The word "can" is given its ordinary meaning. Nothing in the Agreement suggests otherwise. Plaintiffs were able to choose between giving Defendants an opportunity to cure the default or declaring the contract null and void and proceeding on their pending claims. Plaintiffs gave Defendants an opportunity to cure the default. Defendants did not cure it. The Agreement did not, either in its use of the word "can" or in any other term or provision, prohibit Plaintiffs from seeking any legal remedies they may have in a judicial proceeding for a later breach of the Agreement itself.

Defendants do not invoke the terms "release" or "covenant" in opposing Plaintiffs'

motion, but their argument sounds in these concepts. For this reason, it is necessary to address whether the Agreement's terms preclude, as Defendants suggest, any future cause of action for breaching the Agreement. Releases and covenants are contracts. *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 683 (6th Cir. 2013); *Aho v. Cleveland-Cliffs, Inc.*, 219 Fed. App'x 419, 422 (6th Cir. 2007). A release discharges an existing claim. *See Fabrizio v. Hendricks*, 654 N.E.2d 127, 130 (Ohio Ct. App. 1995) ("A release may be defined as the giving up or abandoning of a claim or right to the person against whom the claim exists or against whom the right is to be enforced or exercised."). A covenant not to sue is an agreement not to sue on an existing claim. *See id.* Plainly, any suggestion the Agreement contained a binding release or covenant not to sue is belied by the fact Defendants had not failed to perform under the terms of the Agreement at the time the Agreement was executed. The language does not, as explained above, clearly or unambiguously waive any right to bring a future breach of contract action. In sum, Defendants seek a "free pass" for their breach, but have not shown Plaintiffs agreed to give up or abandon their right to pursue a claim for breach of the Agreement itself.

**B.     Attorneys' Fees**

Defendants argue Plaintiffs are not entitled to attorneys' fees. (Doc. 29 at 411–12.) Defendants cite Ohio law, which generally states "a prevailing party typically may not recover attorneys' fees as part of the costs of litigation." (*Id.* at 411 (citing *Berry v. Lupica*, 965 N.E.2d 318 (Ohio Ct. App. 2011)).) At the same time, Defendants "acknowledge that there is an exception to the rule when the contract at issue in an action for breach is a covenant not to sue or a settlement agreement." (*Id.* at 411–12 (citing *Rohrer Corp. v. Dane Elec. Corp. USA*, 482 Fed. App'x 113, 117 (6th Cir. 2012)).) Defendants argue this exception does not apply because the

8

Agreement only contemplates the two options described above, and does not provide for attorneys' fees. (*Id.* at 412.)

To Plaintiffs, Defendants' argument "relies on the same impermissible interpretation of Paragraph 2(d) that should be rejected[.]" (Doc. 30 at 423.) Plaintiffs also highlight the absence of an express provision regarding attorneys' fees is not a basis for denying attorneys' fees. (*Id.* at 424 (citing *Total Quality Logistics, LLC v. Ackiss*, No. 20-cv-606, 2022 WL 4069310, 2022 U.S. Dist. LEXIS 159663 (S.D. Ohio Sept. 2, 2022)).)

Ohio law "allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary." *Rohrer Corp.*, 482 Fed. App'x at 117; *see also Integrity Energy, Ltd. v. Hunter*, No. 18-cv-00978, 2021 WL 2808689, at *10, 2021 U.S. Dist. LEXIS 125370, at *27 (N.D. Ohio July 6, 2021) (granting attorneys' fees and costs though settlement agreement "d[id] not explicitly provide for such relief"); *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 142 N.E. 3d 1267, 1276 (Ohio Ct. App. 2019) ("Allowing the recovery of attorneys' fees as compensatory damages on a motion to enforce a settlement agreement is consistent with the strong public policy that exists in encouraging settlement and enforcing settlement agreements."). Therefore, Plaintiffs are entitled to attorneys' fees.

The Court's inquiry does not stop there. Attorneys' fees must be reasonable such that it "is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). Plaintiffs bear the burden of demonstrating entitlement to attorneys' fees with "evidence supporting the hours worked and rates claimed." *Reed*, 179 F.3d at 472 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining the reasonableness of attorneys' fees, courts generally start with the number of hours reasonably

9

expended on the matter multiplied by a reasonable hourly rate, commonly referred to as the "lodestar calculation." *Hensley*, 461 U.S. at 422 ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."). Next, "[u]pon determining the lodestar, a district court also has discretion to decide whether an upward or downward adjustment is warranted in order to reach a reasonable fee award." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. App'x 496, 499–500 (6th Cir. 2011).

Plaintiffs seek all fees, expenses, and costs incurred from November 2023 through May 2024. (Doc. 26 at 304; *see also* Doc. 26-1 at 317–18; Doc. 26-5.) In total, Plaintiffs seek $41,075.67 in attorneys' fees and costs. (Doc. 26 at 304–05.) Along with their motion, Plaintiffs submitted affidavits and fee summaries from attorneys Brett Van Benthysen and Colleen Blandford. (Docs. 26-1, 26-5, 26-8, and 26-9.)

The affidavits detail Van Benthysen and Blandford's education, professional experiences, licenses, the jurisdictions in which they are each admitted to practice, and other attorneys who billed time to this matter. (*See* Docs. 26-1, 26-8.) Van Benthysen spent 28.5 hours on this matter at his normal hourly rate of $500.00 in 2023 and $595.00 in 2024. (Doc. 26-1 at 316–17, ¶¶ 16, 18.) Blandford and her associate spent 28.1 hours at her normal hourly rate of $415.00 in 2023 and $440.00 in 2024 for Blandford and an hourly rate of $275.00 for her associate. (Doc. 26-8 at 366, 5.)[3] The affidavits specify Plaintiffs are not seeking to recover fees for paraprofessional service. (Doc. 26-1 at 317, ¶ 19; Doc. 26-8 at 366, ¶ 9.) The Court finds the number of hours expended is reasonable given counsel drafted an amended complaint and

---

[3] Blandford's affidavit references an associate who "performed research for the summary judgment motion and prepared the Motion to Deem Settlement Agreement Not Confidential or Alternatively for Protective Order to File under Seal in May 2024." (Doc. 26-8 at 367, 12.) These hours are not reflected in the fee summary, which only includes fees through March 2024.

10

accompanying motion for leave to file, an opposition to defense counsel's motion to withdraw, a motion to file a pre-discovery summary judgment motion and motion to stay discovery, initial disclosures, a planning report, and a motion for summary judgment. Plaintiffs' counsel also attended status conferences on January 9, 2024 and March 7, 2024.

Reasonable attorneys' fees are calculated based on the prevailing rate in the relevant community. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The prevailing market rate is the rate at which "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* The Court will assess the reasonableness of the requested rates by looking to the prevailing market rates in the greater-Cleveland area. Plaintiff's motion includes several cases from this district holding rates between $450 and $600 per hour were reasonable. (Doc. 26 at 307 (citing cases).) Defendants do not contest these rates are reasonable. (*See* Doc. 29 at 411–12.)

After reviewing cases in this district, the Court is satisfied a rate of $275.00 for an attorney with six years of experience and rates between $415.00 and $595.00 for attorneys with over fifteen years of experience are reasonable. *See Van Horn*, 436 Fed. App'x at 499 (holding district court did not abuse its discretion when it "approved rates ranging from $250 to $450 per hour depending on each attorney's experience" in 2011); *see also Truex v. Drivers Direct, LLC*, 583 F.Supp.3d 1033, 1036 (N.D. Ohio 2022) (approving hourly rate of $500); *Williams v. CG-HHC, Inc.*, No. 22-cv-1003, 2024 WL 1514587, at *3, 2024 U.S. Dist. LEXIS 63514, at *6 (N.D. Ohio Apr. 8, 2024) (approving hourly rates between $400 and $600). Plaintiffs' request for $1,520.17 in costs for legal research and filing fees is also reasonable.

In total, Plaintiffs are awarded $41,075.67 in attorneys' fees and costs.

### C. Prejudgment Interest

Plaintiffs seek prejudgment interest at 8% under Ohio Revised Code Section 1343.03 from the date of the breach of the Agreement on November 21, 2023. (Doc. 26 at 310.) Defendants do not oppose Plaintiffs' request for prejudgment interest. (*See* Doc. 29.)

The purpose of an award of prejudgment interest is to compensate a plaintiff for the period between accrual of the claim and judgment. *See Desai v. Geico Cas. Co.*, 574 F.Supp.3d 507, 521 (N.D. Ohio 2021). In diversity cases like this one, "state law governs awards of prejudgment interest." *Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins.*, 421 F.3d 400, 409 (6th Cir. 2005). Ohio law provides for prejudgment interest for a party that obtains a judgment on a contract claim. Ohio Rev. Code. § 1343.03(A); *see also Northstar Recycling Co., Inc. v. JT Enviro, LLC*, No. 24-cv-1936, 2024 WL 4471077, at *3, 2024 U.S. Dist. LEXIS 186130, at *6–7 (S.D. Ohio Oct. 11, 2024). Under this section of the code, "when money becomes due and payable . . . upon all judgment, decrees, and orders of any judicial tribunal for the payment of the money arising out of . . . a contract or other transaction, . . . the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code," unless some other rate applies. Ohio Rev. Code. § 1343.03(A).

Plaintiffs are entitled to prejudgment interest. Because neither party alleges a different contractual rate applies, the Court applies the standard rate under Ohio Revised Code § 5703.47. That annual rate is determined annually by the tax commissioner. For 2023, the rate was 5.0%. *See* Annualized Certified Interest Rates, https://tax.ohio.gov/researcher/interest-rates (last accessed March 25, 2025). For 2024 and 2025, the rate is 8.0%. *See id.* Defendants are responsible for prejudgment interest at the applicable statutory rate of 5.0% for the time period of November 21, 2023, to December 31, 2023, and 8.0% for the time period of January 1, 2024, to

12

the date of this order.[4] In total, Plaintiffs are entitled to $30,264.29 in prejudgment interest.[5]

### D. Post-judgment Interest

Plaintiffs also seek post-judgment interest to accrue at the maximum legal rate. (Doc. 26 at 310.) Defendants do not oppose Plaintiffs' request for post-judgment interest. (*See* Doc. 29.)

"[T]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990). Under 28 U.S.C. § 1961(a), post-judgment interest is mandatory. 28 U.S.C. § 1961(a) ("Interest *shall* be allowed on any money judgment in a civil case recovered in a district court.") (emphasis added); *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) ("Under 28 U.S.C. § 1961(a), district courts are required to award post-judgment interest."). This statute provides interest "shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System." 28 U.S.C. § 1961(a). The Court grants Plaintiffs' request for post-judgment interest to be calculated in accordance with § 1961(a).

---

[4] Interest under Ohio Rev. Code. § 1343.03(A) is not compounded. *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, No. 08-cv-2429, 2010 WL 2643419, at *4, 2010 U.S. Dist. LEXIS 64963, at *12 (N.D. Ohio June 30, 2010) (citing *Viock v. Stowe-Woodward Co.*, 569 N.E.2d 1070 (Ohio Ct. App. 1989), *vacated in part on other grounds by First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265 (6th Cir. 2012).

[5] This calculation was reached accordingly. For 2023, the prejudgment interest was $1,633.97. [(5%*290,926.09)*(41/365) = $1633.97.] For 2024, the prejudgment interest was $23,274.09. (8%*290,926.09 = 23,274.09.) For 2025, the prejudgment interest is $5,356.23. ([8%*290,926.09)*(84/365).]

### E. Specific Performance

Plaintiffs seek specific performance because "it is the only adequate remedy for forcing Defendants to comply with the express non-monetary terms of the [] Agreement." (Doc. 26 at 310.) Plaintiffs cite paragraph 4 of the Agreement, which "requires Defendants to cause Untitled Labs LLC to be dissolved through the filing of a Certificate of Dissolution with the Ohio Secretary of State." (*Id.*) Plaintiffs also cite paragraph 20 of the Agreement, which requires "Defendants to prepare and file the 2023 tax return for Untitled, send copies to Plaintiffs, and assume any tax liability associated with such filing." (*Id.*) Defendants do not oppose Plaintiffs' motion for summary judgment with respect to specific performance. (*See* Doc. 29.)

A party moving for summary judgment "bears the burden of demonstrating the absence of a genuine issue as to material facts" even where an adverse party fails to respond. *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Absent any opposition, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id.*; *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 Fed. App'x 374, 381 (6th Cir. 2011) (holding a movant was not entitled to summary judgment simply because the other party failed to respond); Advisory Committee Note on 1963 Amendment to Subdivision (e) of Fed. R. Civ. P. 56 (explaining the amendment was not "designed to affect the ordinary standards applicable to the summary judgment motion," and "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented").

Under Ohio law, "[s]pecific performance is only available where there is no adequate remedy at law." *Gleason v. Gleason*, 582 N.E.2d 657, 662 (Ohio Ct. App. 1991). A party

14

seeking specific performance for a contract must show that damages recovered for breach of contract will be an inadequate remedy. *Sashti, Inc. v. Glunt Indus., Inc.*, 140 F.Supp.2d 813, 817 (N.D. Ohio 2001). When a party does not plead a remedy at law is inadequate, "the court should assume a legal remedy exists and refuse to grant specific performance." *Id.*

Plaintiffs have argued contractual damages under the Agreement are not adequate. (Doc. 26 at 310.) The Court agrees an award of monetary damages is not an adequate remedy to address the provisions discussed in paragraphs 4 and 20 of the Agreement. Therefore, Plaintiffs are entitled to specific performance.

F. Sealing

On May 3, 2024, Plaintiffs filed a motion to deem the Agreement not confidential, or in the alternative, authorization to file the settlement agreement under seal as an exhibit to their anticipated motion for summary judgment. (Doc. 24.) Plaintiffs noted that the Agreement contains non-disclosure language stating the parties "agree to keep the terms and conditions of the Agreement and settlement outlined herein completely confidential" and will limit disclosures to attorneys, tax advisors, family and "others as strictly required by operation of law." (Doc. 27 at 389, ¶ 11.) On May 6, 2024, the Court provisionally granted Plaintiffs' motion to file the Agreement under seal. (Doc. 25.) The Court further set a timeline for Defendants to state their position on sealing and/or redacting the Agreement. (*Id.*) Defendants timely responded. (Doc. 28.)

"The courts have long recognized [ ] a strong presumption in favor of openness as to court records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown v. Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)) (internal quotations omitted); *see also In re Nat'l Prescription Opiate Litig.*, 927 F.3d

15

919, 939 (6th Cir. 2019). The party seeking to either seal or redact court records bears the burden of overcoming this presumption. *Shane Grp.*, 825 F.3d at 305. And the "burden is a heavy one" in these instances. *Id.* "Only the most compelling reasons can justify non-disclosure of public records." *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).

Therefore, the proponent of sealing must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06. The reasons and legal citations provided by the moving party must be sufficient to allow a district court to "set forth specific findings and conclusions which justify nondisclosure to the public." *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016). "Even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Shane Grp*, 825 F.3d at 305 (citing *Press–Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 509–11 (1984)).

Here, as the proponents of sealing the Agreement, Defendants bear the burden of overcoming the presumption in favor of openness to court records. *Shane Grp.*, 825 F.3d at 305. In addition to referencing the Agreement's confidentiality provision, Defendants argue "the need for, and the constitutionality of, secrecy in settlement proceedings" supports maintaining the Agreement under seal. (Doc. 28 at 401 (citing *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003)).)

A "confidentiality agreement between the parties does not bind the court in any way." *Brown*, 710 F.2d at 1180. As other district courts in this Circuit have noted, the rationale for protecting settlement negotiations discussed in *Goodyear* "does not extend to protect the terms of

16

completed settlement agreements." *Nassrallah v. Equifax Info. Servs., LLC*, No. 23-10859, 2024 WL 399805, at *2, 2024 U.S. Dist. LEXIS 19081, at *4 (E.D. Mich. Feb. 2, 2024) (granting motion to seal on other grounds); *see also Davis v. Alcoa, Inc.*, No. 17-13658, 2019 WL 3346075, at *1, 2019 U.S. Dist. LEXIS 132603, at *4–5 (E.D. Mich. June 10, 2019) (same).

What is more, the Agreement Defendants maintain should remain sealed is at the heart of the present dispute. *See Allied World Surplus Lines Ins. Co. v. Richard Goettle, Inc.*, No. 17-cv-670, 2024 WL 3872947, at *6 n.11, 2024 U.S. Dist. LEXIS 147640, at *13 n.11 (S.D. Ohio Aug. 19, 2024) (denying motion to seal because a settlement agreement would "assist in the Court's adjudication," which "render[ed] it a judicial document to which the right to public access attaches"). Moreover, Defendants have not explained how a general interest in preserving the confidentiality of settlement negotiations outweighs the public's interest in access to court records, particularly records that, as is the case here, inform the Court's resolution of a dispute about breaching the terms of a negotiated agreement. *Shane Grp.*, 825 F.3d at 3087; *see also Matter of Smithland Towing & Const., LLC*, No. 18-cv-00113, 2024 WL 504030, at *1–2, 2024 U.S. Dist. LEXIS 24369, at *5–6 (W.D. Ky. Jan. 8, 2024) (denying motion to seal settlement agreement); *Hargrove v. Jefferson Cnty. Bd. of Educ.*, No. 16-cv-806, 2022 WL 188190, at *5, 2022 U.S. Dist. LEXIS 10472, at *13–14 (W.D. Ky. Jan. 20, 2022) (same). Accordingly, the Court's provisional sealing Order is VACATED. The Agreement (Doc. 27) is no longer a sealed document. The Clerk of Court will make the document publicly available.

## IV.    CONCLUSION

For the reasons above, summary judgment (Doc. 26) is GRANTED in Plaintiffs' favor for breach of the Agreement (Count Seven). Plaintiffs are hereby awarded $290,926.09 in damages, $41,075.67 in attorneys' fees and costs, $30,264.29 in prejudgment interest, and post-

judgment interest.  Plaintiffs' motion for summary judgment on Count Eight (specific performance) is also GRANTED.  Further, the Agreement, Exhibit A to Plaintiffs' Motion for Summary Judgment (Doc. 27), will not remain under seal.  The Clerk of Courts is to make the document publicly available as soon as practicable.

**IT IS SO ORDERED.**

**Date:**  March 25, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE